```
               IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS
```

COLLEEN SCHMIDT,

                Plaintiff,

vs.                              Case No. 10-1414-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                Defendant.

                     MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

      The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On November 25, 2009, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 49-55). Plaintiff alleges that she has been disabled since September 6, 2005 (R. at 49). Plaintiff is insured for disability insurance benefits through December 31, 2005 (R. at 51). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from September 6, 2005 through her date last insured (R. at 51). At step two, the ALJ found that plaintiff had the following severe

impairment: rheumatoid arthritis (R. at 51).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 52).  After determining plaintiff's RFC, that plaintiff can perform a full range of sedentary work (R. at 52), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 54).  At step five, the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 55).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 55).

**III.  Did the ALJ err by characterizing the medical records prior to plaintiff's date last insured as "unremarkable"?**

In his decision, the ALJ stated the following:

> Medical records for periods prior to the date last insured are unremarkable.

(R. at 54).  Plaintiff argues that the ALJ significantly mischaracterized the medical records by stating that these records are "unremarkable."  By categorizing these records as "unremarkable," plaintiff asserts that the ALJ has improperly excluded important evidence that was not properly considered nor properly evaluated.  Plaintiff specifically alleges that the ALJ ignored the medical record from November 3, 2005[1] (Doc. 12 at 15-

---

[1] Plaintiff cites to a medical record from November 27, 2005 (Doc. 12 at 15); however, the date of the note is November 3, 2005; the note was signed by Dr. Nowlin on November 27, 2005 (R. at 836-837).

5

17). The medical record from November 3, 2005 indicates that plaintiff had rheumatoid arthritis, which was not well controlled. The medical note indicated that plaintiff had run out of medication and had not been taking it for 2 weeks. She was having pain everywhere, particularly in her hands, shoulders, and hips. She also had swelling in her hands, left shoulder, and wrists. Plaintiff indicated she had 2 hours of morning stiffness and night sweats, and was extremely tired. Plaintiff also reported that her job with the post office did not work out and now she is at home with the children (R. at 837). The ALJ summarized this note as follows:

> On December 14, 2005,[2] she reported that her job with the Post Office did not work out and she was going to stay home with her children. At this time, she reported some pain, swelling, stiffness and fatigue. However, she also acknowledged that she had not taken her medication for 2 weeks (exhibit 10F/200). The claimant resumed medication with a notation on March 31, 2006 that she had improved on Remicade. She had improvement in the swelling and stiffness. She was noted to have some tenderness, but no other abnormalities (exhibit 10F/188)[R. at 825].

(R. at 53).

The court finds that the ALJ did not ignore the medical record of November 3, 2005, but, in fact, the ALJ accurately

---

[2]The ALJ mistakenly listed December 14, 2005 as the date of the medical note. In fact, the date of the note cited by the ALJ (exhibit 10F/200) is a note from November 3, 2005 (R. at 836-837).

summarized the medical record of November 3, 2005, and other medical records during that same time period.  It is true that the ALJ did not discuss each medical record during this time period, e.g., the ALJ did not discuss the medical notes from December 2005.  Although the record must demonstrate that the ALJ considered all of the evidence, an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.  Clifton v. Chater, 70 F.3d 1007, 1009-1010 (10th Cir. 1996); see Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008).  The court must make sure that the ALJ gave the relevant evidence due consideration.  Andersen v. Astrue, 319 Fed. Appx. 712, 721 (10th Cir. Apr. 3, 2009).  The court finds no clear error by the ALJ in his discussion and summary of the medical evidence in late 2005 and early 2006.

Later, the ALJ summarized the medical records from September through December 2005 as unremarkable (R. at 54).  The ALJ then stated that, for the period at issue (late 2005), the record reflects the ability to do sedentary activities (R. at 54).  Although the medical notes in November 2005 indicate that plaintiff's arthritis was not well controlled and that she had a lot of pain, swelling, and stiffness, the medical notes also

7

indicate that the plaintiff had not been taking her medications for 2 weeks.  The ALJ accurately noted this information in his decision.  The ALJ also accurately noted the medical notes from March 2006 showing improvement with her medication, including improvement in swelling and stiffness, although she still had some tenderness in her joints (R. at 53).

     Furthermore, the ALJ, in making his RFC findings, indicated his agreement with the state agency medical assessment, which found that plaintiff could perform sedentary work (R. at 54). That assessment, dated February 4, 2009 (R. at 368-375), was approved by Dr. Warren on June 24, 2009 (R. at 470).  The record also indicates that Dr. Tawadros appeared to affirm a previous sedentary RFC finding on February 3, 2009 (R. at 367, 369, 213). Dr. Tawadros referenced some of the medical records, and specifically noted that plaintiff had quit working because the job did not work out and she decided to stay at home with her children (R. at 367); this information is contained in the medical notes from November 3, 2005 (R. at 837).  Thus, the ALJ made RFC findings based on medical opinion evidence that plaintiff could perform sedentary work based on their review of plaintiff's medical records, including those in November 2005.

     In summary, first, the medical records show that plaintiff's serious symptoms in November 2005 correlated with her not taking medication for 2 weeks; the medical records also indicate that

she improved with medication in March 2006. Second, the medical opinion evidence, which reviewed the relevant medical records, found that plaintiff could perform sedentary work. On these facts, the court finds no clear error by the ALJ when he summarized the medical records from late 2005 as unremarkable to the extent that the record reflects the ability to do sedentary activities. The court finds no error by the ALJ in his characterization of the relevant medical evidence.

**III. Did the ALJ err in his consideration of plaintiff's daily activities?**

In his decision, the ALJ stated the following:

> The claimant completed a daily activity statement in January 2009 reporting that she resides with her family. She reported the ability to care for herself. She spent her day doing housework, caring for her children and taking them to and from school (exhibit 6E). Although this statement is completed in January 2009 and well after the date last insured, it does not reflect significant limitations.

(R. at 53). The ALJ later stated that her daily activities were consistent with sedentary work activities (R. at 54). Dr. Tawadros, in her report finding that plaintiff could perform sedentary work, specifically indicated that she had looked at plaintiff's activities of daily living (ADLS) (R. at 367, 369, 213). Thus, the finding of the ALJ that plaintiff's activities of daily living were consistent with sedentary work activities is

9

supported by the medical opinion of Dr. Tawadros.  The court therefore finds that substantial evidence supports the finding of the ALJ that plaintiff's activities of daily living were consistent with sedentary work activities.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 9th day of December, 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge